UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF APPLICATION OF JASON LEOPOLD AND BUZZFEED, INC. FOR ACCESS TO CERTAIN SEALED COURT RECORDS | Miscellaneous Action No. 20-95 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

On September 17, 2020, petitioners Jason Leopold and Buzzfeed, Inc., applied to this Court for an order directing the unsealing of currently sealed applications, along with any supporting documents and resulting court orders, filed by the U.S. Drug Enforcement Agency ("DEA") since May 31, 2020 that were submitted for a non-Title 21, U.S. Code, investigative or law enforcement purpose. Appl. ¶ 3, ECF No. 1.[1] This petition was prompted by information that, over the two-week period from May 31, 2020 to June 14, 2020, the Attorney General delegated non-Title 21 duties to the DEA. *Id*. ¶ 2 (citing Ex. A, Memorandum, dated May 31, 2020, from Timothy Shea, Acting Administrator of the DEA, to the Deputy Attorney General). Petitioners opted to limit the types of judicial records sought to be unsealed in response to the petition to DEA applications for: (1) warrants issued pursuant to the Stored Communications Act ("SCA"), *see* 18 U.S.C. § 2703(a); (2) court orders issued pursuant to section 2703(d) of the SCA; and (3) court orders authorizing the installation and use of pen register and trap and trace ("PR/TT") devices, *see id.* § 3123.

Rather than file a request for these records directly from the U.S. Department of Justice or its component, DEA, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

---

[1] Petitioners' application was directly referred by the Clerk's Office to the Chief Judge because it "pertains to a criminal investigative or grand jury matter to which no judge has been assigned." D.D.C. LCrR 57.6.

which expressly provides exceptions to disclosure that may be applicable to the records sought to be unsealed here, *see, e.g., id.* § 552(b)(7), (c), petitioners are seeking, under the authority of *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders* ("*Leopold*"), 964 F.3d 1121 (D.C. Cir. 2020), now on remand before this Court, to have the U.S. District Court for the District of Columbia search for, identify, review, unseal as appropriate, and make publicly available these records, Pet'rs' Mem. Supp. Appl. at 9–10, ECF No. 1-1.  The parties in both the instant case and the remanded, earlier case, which was brought by Leopold and the Reporters Committee for Freedom of the Press ("RCFP") to unseal decades of sealed investigative applications and orders, *In re Application of Jason Leopold*, No. 13-mc-712 ("*In re Leopold/RCFP*"), were directed to show cause why the two cases should not be consolidated. *See* Minute Order to Show Cause (Oct. 6, 2020); Minute Order to Show Cause (Oct. 6, 2020), *In re Leopold/RCFP*, No. 13-mc-712.  While the petitioners in both cases have no objection to consolidation, the government opposes.  *See* Pet'rs' Resp. to Order to Show Cause ("Pet'rs' Resp."), ECF No. 3*;* Pet'rs' Resp. to Sept. 1, 2020 Minute Order ("Pet'rs' *In re Leopold/RCFP* Resp.") at 15–16, *In re Leopold/RCFP*, No. 13-mc-712, ECF No. 68;  Gov't's Resp. to Court's Sept. 1, 2020 Minute Order Following Remand from the D.C. Circuit ("Gov't's *In re Leopold/RCFP* Resp.") at 24, *In re Leopold/RCFP*, No. 13-mc-712, ECF No. 67.  For the reasons set out below, the two cases will be consolidated.

I.      **LEGAL STANDARD FOR CONSOLIDATION**

A court may consolidate two pending actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2).  Consolidation "is permitted as a matter of convenience and economy," *Hall v. Hall*, 138 S. Ct. 1118, 1127 (2018) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496 (1933)), and "is ordinarily left to the sound discretion of the District Court,"

*Moten v. Bricklayers, Masons, & Plasterers, Int'l Union Am.*, 543 F.2d 224, 228 n.8 (D.C. Cir. 1976); *see also United Bhd. Carpenters & Joiners v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 689–90 (D.C. Cir. 2013).  In exercising that discretion, district courts must weigh any potential prejudice and confusion resulting from consolidation against the risk of inconsistent rulings on common factual and legal questions, particularly involving identical or overlapping parties, and the concomitant burden on the parties and the court, length of time, and relative expense of proceeding with separate lawsuits if they are not consolidated.  *See* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2383 (3d ed. 2020) (citing *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)): *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) (same); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) (same); *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) (same); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 18 (D.D.C. 2016); *Royer v. Fed. Bureau Prisons*, 292 F.R.D. 60, 61 (D.D.C. 2013); *Nat'l Ass'n Mortg. Brokers v. Bd. Governors Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011).

## II.   DISCUSSION

Petitioners Jason Leopold and Buzzfeed in the instant case, and petitioners Leopold and intervenor RCFP in *In re Leopold/RCFP*, seek to unseal currently sealed investigative applications and related orders filed by the government in this Court, pursuant to the SCA, 18 U.S.C. §§ 2701 *et seq*., and the Pen Register Act ("PRA"), 18 U.S.C. §§ 3121, *et seq*.  Given the obvious common issues of law and fact raised by both petitions, the parties in both cases were directed, as noted, to provide their views on consolidation.  At the same time, the parties in *In re Leopold/RCFP* were directed to provide their views on how that case should proceed on remand.  *See* Minute Order to Show Cause (Sept. 1, 2020), *In re Leopold/RCFP*, No. 13-mc-712.  The

question of consolidation turns, in part, on how *In re Leopold/RCFP* will proceed on remand, and thus the D.C. Circuit's decision and its import in carrying out the mandate on remand are discussed first, before turning to the reasons strongly militating in favor of consolidation of the petitions in both cases.

        **A.**       **The *Hubbard* Factors and the D.C. Circuit's *Leopold* Decision**

The D.C. Circuit in *Leopold* confirmed that disclosure of the judicial records at issue in both the instant case and in *In re Leopold/RCFP* is governed by the six-factor test of *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). *Leopold*, 964 F.3d at 1130. Those six *Hubbard* factors are "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any generalized property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Id.* at 1131 (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)). Based on its construction of the statutory authorities implicated by the judicial records at issue, the D.C. Circuit concluded that a strong presumption of public access applies to SCA warrants and 2703(d) orders but not to PR/TT orders. *See id.* at 1130–31 ("With respect to SCA materials, . . . Congress displaced neither the common-law presumption of access nor the *Hubbard* test for making unsealing decisions [and] [w]ith respect to pen register orders, . . . Congress did displace the presumption, but did not displace the *Hubbard* test as the standard for unsealing. Therefore, when faced with a request to unseal either kind of material, the district court should apply the traditional *Hubbard* balancing test—albeit without a thumb on

Case 1:20-mc-00095-BAH   Document 7   Filed 12/10/20   Page 5 of 15

the scale in the case of pen register orders."). Further, the D.C. Circuit held that "the burden of producing judicial records may not permanently foreclose their unsealing." *Id*. at 1134.

In so holding, the D.C. Circuit rejected this Court's reading of *Hubbard* as setting out the six enumerated factors, in part III.A of the opinion, as "generalized interests," *Hubbard*, 650 F.2d at 317, which "can be weighed without examining the contents of the documents at issue," *id*., and also allowing consideration of additional "particularized" factors, which required focus "on the documents' contents," *id*. at 322. Following part III.A., titled "The 'Generalized Interests' for and Against Public Access in This Case," the *Hubbard* Court outlined consideration of such particularized factors in two separate subsequent sections, parts III.B, "Particularized Factors That May Have Weighed Against Nondisclosure," *id*. at 322, and III.C, "Particularized Privacy Interests Which May Weigh in Favor of Denying Public Access," *id*. at 323. Part IV of the *Hubbard* opinion, "The Procedures to Be Followed in the Supplemental Proceedings," *id.* at 324, summarized the Circuit's analysis of the "generalized interests at stake," and observed that its conclusion "that the seal on the documents at issue should be retained" could be overcome on remand should the trial judge "justif[y] disclosure on the basis of the 'particularized' factors we suggest or on some other basis," *id*.[2] In other words, in *Hubbard*, the generalized factors were a critical part, but not the entirety, of the analysis, as the D.C. Circuit now holds, *see Leopold,* 964 F.3d at 1132 (finding that six enumerated factors of *Hubbard* test were "adopted to 'fully account for the various public and private interests at stake' in sealing or unsealing judicial records" (quoting *MetLife*, 865 F.3d at 666)).

---

[2] On remand, the district court in *Hubbard* structured its analysis according to the Circuit's opinion, separately analyzing the six generalized interests for and against disclosure and then the "particularized justifications for the release of individual documents or groups of documents," and concluding that the documents at issue should be unsealed. *Hubbard*, 650 F.2d at 332. The district court's decision on remand was reversed for incorrect analysis of the particularized justifications. *See id.* at 332–33.

5

Relying on the particularized factors and interests highlighted by the *Hubbard* Court in examining the contents of the documents sought to be unsealed, this Court previously found that "[w]here the type of record sought to be unsealed requires careful review prior to unsealing to ensure that information properly retained under seal is not disclosed, and where the volume of the materials sought be unsealed amplifies the burden that undertaking such review will impose on a party and/or the Court, *Hubbard* properly allows a court to cognize such burden in weighing a motion to unseal." *In re Leopold*, 327 F. Supp. 3d 1, 25 (D.D.C. 2018) (citing *Hubbard*, 650 F.3d at 323). This Court then declined to recognize a retrospective right of access, given the decades of sealed applications at issue, "in light of the considerable administrative burden that such extensive unsealing . . . would impose on the [U.S. Attorney's Office] and the Clerk's Office, due to the necessity of identifying, reviewing and redacting sensitive law enforcement and privacy-protected information from any unsealed records." *Id.* at 7. Notably, on appeal, the government did not defend that conclusion. *Leopold*, 964 F.3d at 1132.

Since *Hubbard* itself does not "mention administrative burden as a 'particularized . . . other interest,'" *id*. (quoting *Hubbard*, 650 F.2d at 323), the D.C. Circuit concluded that no such particularized reasons "based on the documents' *contents*" can be "reasons for sealing entire categories of past and future filings," *id*. (emphasis in original). As a result, "although administrative burden is relevant to how and when documents are released, it does not justify precluding release forever," and no matter how time-consuming production may be, "time-consuming is not the same thing as impossible." *Id*. at 1133. Accordingly, the Circuit held that "the burden of producing judicial records may not permanently foreclose their unsealing." *Id.* at 1134.

B.        **Remand Proceedings in *In re Leopold/RCFP*, 13-mc-712**

In outlining their views on remand proceedings in *In re Leopold/RCFP*, the parties focus their responses on prospective relief, that is, on the mechanism for unsealing investigative materials going forward, and acknowledge that they currently have no plan for implementing the D.C. Circuit's mandate in *Leopold* as to historical materials. *See* Gov't's *In re Leopold/RCFP* Resp. at 14–16. Nonetheless, the parties evidently anticipate that retrospective relief will be limited in two significant ways: first, any disclosures from sealed records will encompass only the specific materials petitioners requested and, second, for the most part, no actual sealed judicial records will be unsealed, but rather certain agreed-upon information will be "extract[ed]" from those sealed documents. *See id.* at 2. That anticipated plan seems far off-base from the D.C. Circuit's mandate, however.

The D.C. Circuit in *Leopold* indicated that the documents themselves must be unsealed and rejected the steps already taken to make publicly accessible docket and other information for these judicial records as falling short of the requisite disclosure. As a reminder of what the D.C. Circuit found insufficient, this Court had developed a workable solution to provide public access to both retrospective and prospective docket information for SCA applications for warrants and orders, under 18 U.S.C. §§ 2703(a), (c) and (d); for PR/TT applications and orders, under 18 U.S.C. §3123; and for records, at the request of foreign governments, under Mutual Legal Assistance Treaties ("MLATs"), 18 U.S.C. § 3512. On a retrospective basis, the Court "provided an unprecedented level of transparency into the process of judicial review of the [U.S. Attorney's Office's] use of PR/TT and SCA authorities to collect evidence in criminal investigations," *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 300 F. Supp. 3d 61, 100 (D.D.C. 2018), by unsealing (1) the total numbers of U.S.

7

Attorney's Office ("USAO")-filed PR/TT matters filed annually during the period of 2008 through 2016;[3] (2) the total numbers of SCA § 2703(d) and warrant matters, retrieved using certain search criteria, filed by the USAO and Department of Justice ("DOJ") components during this period; (3) certain docket information concerning PR/TTs the USAO initiated during this period; (4) over 100 pages of redacted documents from four representative sample PR/TT matters from 2012; and (5) fifteen categories of extracted information from a representative sample of ten percent of USAO-filed PR/TT matters from 2012, *id.* On a prospective basis, the Clerk's Office and both the USAO and DOJ adopted administrative and operational changes in processing sealed government surveillance applications in criminal investigative matters to permit such applications to be filed electronically, pursuant to Memoranda of Understanding ("MOUs") with the Clerk's Office, *see* D.D.C. LCrR 49(e)(4), using a standardized format for case captions that contained no personally identifying information, but, depending on the type of application, included pertinent information about: "(1) the number of target telephone lines, subscriber accounts, and/or devices that are the application's subject or subjects; (2) the type of target or targets (*e.g.*, a landline, cellular, or mobile telephone; email account; cell tower; or other facility or device) subject to the application; (3) the service provider to which the order would be directed; and (4) the primary offense statute(s) under investigation." *Id.* at 105.[4]  Further, biannual docket reports have been issued about various types of sealed criminal investigative

---

[3]     *See* Order and Notices, *In re Appl. of Jason Leopold to Unseal Certain Electronic Surveillance Appl. and Orders,* No. 13-mc-712 (Sept. 21, 2016, Feb. 22, 2017, and Apr. 24, 2017), ECF Nos. 22, 32, and 37; Order and Notice, *In re Disclosure of Pen Registers from January 1, 2017 through September 30, 2017,* No. 18-mc-61 (Apr. 30, 2018), ECF No. 1; Standing Order No. 18-46, *Disclosure of Limited Docket Lists for Certain Sealed Appls. Filed by USAO-DC* (Oct. 2, 2018).

[4]     The referenced MOUs are available on the Court's website, at *MOUs—Electronic Filing of Sealed Applications and Orders*, U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, https://www.dcd.uscourts.gov/mous-electronic-filing-sealed-applications-and-orders (last visited Dec. 10, 2020).

matters filed twelve through six months prior to each report's publication that provide information about the total numbers of such matters and, as reflected in the standardized caption for each matter, the number and type of target accounts (*e.g.*, landline telephone, cellular telephone, and/or email), the providers' names, and the primary offense statutes under investigation. *See Standing Orders Regarding Unsealing of Limited Docket Information for Sealed Applications*, U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, https://www.dcd.uscourts.gov/news/standing-orders-regarding-unsealing-limited-docket-information-sealed-applications (last visited Dec. 10, 2020).

This comprehensive solution for providing limited transparency as to the nature of the sealed dockets for investigative matters, while avoiding the administrative burden of undertaking the time-consuming and meticulous process of unsealing appropriately redacted documents contained in those sealed dockets, was rejected by the D.C. Circuit as inadequate, because those docket "reports are not the court dockets themselves and do not indicate whether an application for a warrant or order was granted or denied." *Id.* at 1132. Consequently, the parties in *In re Leopold/RCFP* agree that the biannual generation of this unsealed docket information for sealed investigative applications should be discontinued. *See* Pet'rs' *In re Leopold/RCFP* Resp. at 11; Gov't's *In re Leopold/RCFP* Resp. at 18. Accordingly, the mechanism used by this Court for several years to provide limited transparency regarding the sealed dockets for sealed investigative applications filed in this Court by both the USAO and DOJ under the SCA, the PRA, and MLATs is now discontinued.

The Circuit also rejected the proposition that a public right to access existed as to certain information in the filings but not the filings themselves, *id.* at 1131, and instead contemplated that the "documents [must be] *released*, *id.* at 1133 (emphasis added). These statements, plus the

9

rejection of the Court's alternative solution to provide the public with limited information about the sealed investigative applications and related judicial records without conducting wholesale unsealing, indicate that SCA and PR/TT materials must be unsealed both retrospectively and prospectively.[5]

This conclusion comports with the Circuit's more specific instructions on how to proceed on remand. The Circuit held that "[a]dministrative burden is relevant to *how* and *when* a judicial record may be unsealed, but not to *whether* it may be released at all." *Id.* at 1123 (emphasis in original). As the Circuit noted, this Court previously determined that the *Hubbard* factors weighed in favor of access to the investigative materials at issue, *see Leopold*, 964 F.3d at 1126 (citing *In re Leopold*, 327 F. Supp. at 22), and held that the materials were not subject to wholesale unsealing only because of the administrative burden involved, *see id.* (citing *In re Leopold*, 327 F. Supp. 3d at 5, 7, 21–22). Ejecting administrative burden from the *Hubbard* analysis, as the Circuit has directed, *see id.* at 1132, dictates that the investigative materials must be unsealed, with some flexibility left to the district court to manage "the manner or timing of unsealing," *id*. at 1133, for example, to allow redactions to be made over a sufficient time period that "the U.S. Attorney's and Clerk's Offices" need not "drop everything and make unsealing their top priority," *id*.

The parties, in contrast, assert that production of "extractions" of certain information from the sealed investigative materials at issue going back to 2008 is sufficient retrospective relief to comply with the Circuit's *Leopold* mandate. *See* Pet'rs' *In re Leopold/RCFP* Resp. at

---

[5]  Moreover, the government's acknowledgement that the Circuit's mandate requires prospective unsealing of the judicial records at issue, *see* Gov't's *In re Leopold/RCFP* Resp. at 2–14, undercuts any suggestion that historical investigative records of the same types need not also be unsealed, as the logic of the Circuit's opinion provides no basis for so distinguishing between past and future filed investigative materials.

6–8; Gov't's *In re Leopold/RCFP* Resp. at 14–15. [6] This position, however, is at odds with the Circuit's clear indication that a right of access pertains "to the filings themselves," not just the information contained therein, *see Leopold*, 964 F.3d at 1131.

Further, although petitioners acknowledge "that the D.C. Circuit's opinion in . . . *Leopold* does not preclude Petitioners from agreeing voluntarily to narrow the scope of the retrospective relief sought in this litigation" and state that they "do not intend to ask the Court on remand to grant additional retrospective relief beyond the retrospective relief that [they] previously requested," Pet'rs' *In re Leopold/RCFP* Resp. at 5, in the next breath, they assert that they do not view "any agreed-upon limitations on the scope of [their] retrospective relief . . . [to] curtail or otherwise restrict the right of Petitioners—or any other member of the press or public—to seek the unsealing of docket sheets and/or other judicial records[,] in particular SCA or PRA matters[,] on a case-by-case basis." *Id.* at 6. Indeed, even before any unsealing procedure has been settled in *In Re Leopold/RCFP,* petitioners Leopold and Buzzfeed in the instant case seek unsealing of entire records, not merely an extraction of information, should the requested materials exist. Appl. ¶¶ 3, 18–20.

Petitioners appear to contemplate that, as an alternative to filing requests for investigative records directly to federal law enforcement agencies, pursuant to FOIA's statutory framework and clearly delineated exemptions, the norm going forward is to file petitions for unsealing of such records to this Court under *Leopold'*s directive. The Court and its Clerk's Office, unlike an agency subject to FOIA, is not equipped with electronic search tools beyond the federal Judiciary's Case Management/Electronic Case Files system (CM/ECF) nor staffed to process and

---

[6] The government proposes unsealing, rather than providing extractions of, some requested sealed investigative materials filed since 2015, *see* Gov't's *In re Leopold/RCFP* Resp. at 15, but otherwise suggests that retrospective relief will take the form of extractions rather than unsealing.

11

respond to "case-by-case" requests for unsealing. Thus, the clear import of the Circuit's decision in *Leopold*, together with its nod to the district court's flexibility to manage the unsealing process, is that historical SCA and PR/TT materials are subject to redaction and unsealing—not merely to an extraction process, even if these petitioners would be satisfied with such process. Upon unsealing, petitioners and any other interested members of the public or media may conduct their own searches of publicly accessible judicial records to identify any such records of interest.

## C. Consolidation of the Instant Case with *In Re Leopold/RCFP*

Against this backdrop summarizing the requirements and import of the D.C. Circuit's decision and mandate in *Leopold,* the Court now turns to the question of whether consolidation of the instant case with *In re Leopold/RCFP* is appropriate. In response to the Court's order to show cause why the instant case should not be consolidated with *In re Leopold/RCFP*, petitioners state they "do not oppose consolidation" but "do not view consolidation as needed to guard against the risk of inconsistent rulings . . . ; nor, in petitioners view, will consolidation result in greater convenience or economy." Pet'rs' Resp. at 1. For its part, the government opposes consolidation, stating that the instant petition is "a request for the unsealing of a separate and new and discrete matter, not a request for wholesale unsealing like what is involved" in *In re Leopold/RCFP*. Gov't's *In re Leopold/RCFP* Resp. at 24. Further, the government "neither admit[s] nor den[ies] the existence" of the documents that petitioners seek in the instant case, Gov't's Opp'n Pet'rs' Appl. ¶ 4, ECF No. 5, and argues that this application is "an inappropriate legal vehicle to compel a prosecutor to admit or deny the existence of any ongoing criminal investigation," *id.* ¶ 9.

Consolidation will promote judicial economy for the Court, including its Clerk's Office staff, as well as result in greater economy of time and resources for the parties, because of the considerable substantive overlap between the subject matter of the two cases. Both cases seek unsealing of the same types of records, though the instant case has a more limited scope. Thus, assuming they exist, the materials that petitioners seek to have unsealed in the instant case will ultimately be unsealed in the course of implementing the D.C. Circuit's mandate in *Leopold*. Certainly, the same substantive analysis would apply in both cases. Most importantly, implementation of any operational process to search for, identify, redact, and unseal as appropriate, would be the same in both cases. In this regard, proceeding on separate tracks in two separate cases seeking unsealing of the overlapping sets of records is nonsensical, and may result in confusion.

To be sure, consolidating this case with *In re Leopold/RCFP* may mean petitioners here will not have access to the requested records as quickly as they would like. The materials requested here, to the extent they exist, will be unsealed not on demand but rather in the course of the wholesale unsealing that, as explained, implementation of the D.C. Circuit's mandate in *Leopold* requires. Thus, consolidation could be understood to delay resolution of the instant case, which in some instances would weigh against consolidation. *See, e.g.*, *Nat'l Ass'n Mortg. Brokers*, 770 F. Supp. 2d at 286. That is not so here, however, because any delay would be a byproduct not of consolidation but of the fact that the materials sought here would be unsealed in the course of the wholesale unsealing that must be conducted *In re Leopold/RCFP*, and that the wholesale unsealing involves a large volume of records and will be a time-consuming process. Given the overlap between *In re Leopold/RCFP* and the instant case, such possible delay poses no reason to proceed with separate cases. Conversely, consolidation will have no impact on the

timely resolution of *In re Leopold/RCFP*, since the materials sought in the instant case, if they exist at all, will eventually be unsealed in *In re Leopold/RCFP* anyway.

Moreover, proceeding separately with both cases—let alone, with other potential FOIA-like petitions for public access to sealed investigative judicial records—would impose a considerable burden on the Court. Responding to potentially innumerable individualized unsealing requests for large volumes of sealed records, or highly specific categories of records, such as the request in the instant case, would occupy substantially more judicial attention and resources than directing and overseeing the systematic, wholesale unsealing of *all* materials related to applications for SCA warrants, SCA section 2703(d) orders, and PR/TTs. Whether these materials are unsealed piecemeal, namely in response to individual petitioners' requests, or categorically, the end result, of course, is the same: the records will be unsealed. For these reasons, consolidation is appropriate.

The government argues that consolidation is unnecessary since the instant petition seeks unsealing of "a separate and new and discrete matter," Gov't's *In re Leopold/RCFP* Resp. at 24, but this argument overlooks the fact that implementation of the D.C. Circuit's mandate in *Leopold* encompasses unsealing of the materials petitioners request here, too. The government likewise ignores the substantial judicial-economy reasons for systematically unsealing all materials related to applications for SCA warrants, SCA section 2703(d) orders, and PR/TTs. The Court is not equipped, and does not intend, to manage and respond to individual unsealing requests like the one in the instant case, releasing investigative applications, orders, and related materials bit by bit at the discretion of any petitioner with the initiative to file an application to unseal some given subset of such records, as easily as a FOIA request is made to a federal agency. Instead, the D.C. Circuit's mandate to "release[]" the "judicial records" at issue here,

*Leopold*, 964 F.3d at 1134, will be implemented by unsealing all of those records, in redacted form as appropriate, including the records petitioners seek in the instant case.

### III.  ORDER

Accordingly, upon consideration of petitioners' Response to Order to Show Cause, ECF No. 3, petitioners' Response to September 1, 2020 Minute Order, *In re Leopold*, No. 13-mc-712, ECF No. 68, and the government's Response to Court's September 1, 2020 Minute Order Following Remand from the D.C. Circuit, *In re Leopold*, No. 13-mc-712, ECF No. 67, it is hereby

**ORDERED** that this case be CONSOLIDATED with *In re Application of Jason Leopold*, No. 13-mc-712; and it is further

**ORDERED** that all filings in these consolidated cases shall be made only in case no. 13-mc-712; and it is further

**ORDERED** that the Clerk shall close this case and transfer whatever parties are not identical to case no. 13-mc-712.

**SO ORDERED.**

Date: December 10, 2020.

_____
BERYL A. HOWELL
Chief Judge